**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**KIM ROUMELIOTE**,

      **Plaintiff,**                                  **Case No. 05-CV-847**
                                                       **JUDGE GREGORY L. FROST**
**vs.**                                            **Magistrate Judge King**

**LONG TERM DISABILITY PLAN**
**FOR EMPLOYEES OF WORTHINGTON**
**INDUSTRIES**

      **Defendant.**

**OPINION AND ORDER**

      In this Employee Retirement Income Security Act ("ERISA") action, Plaintiff Kim

Roumeliote ("Plaintiff"), appeals from the denial of her application for long-term disability

benefits under a plan administered by Unum Life Insurance Company of America ("Unum") to

Worthington Industries.  The parties have filed cross-motions for judgment on the administrative

record, and briefing on those motions is now complete.  (Docs. # 16, 20, 22, 23.)  For the reasons

that follow, the Court **DENIES** Plaintiff's motion (Doc. # 16) and **GRANTS** Unum's motion

(Doc. # 20).

**A.  Background**

      Unum is the long-term disability insurer for the Worthington Industries Group Disability

Plan ("the Plan").  Plaintiff was covered by the terms of the Plan while she worked for over three

years as a commuter programmer at Worthington Industries.  In 2003, Plaintiff received a

negative employment evaluation and was put on probation.  In August of 2003, Plaintiff stopped

working and filed a claim for short-term disability due to sleep apnea, narcolepsy, and an

inability to concentrate.  Plaintiff, however, has never undergone cognitive testing.  Based on these reported symptoms, Plaintiff was paid short-term disability for initially two months, and then pursuant to a behavioral medical review for an additional six weeks.

Once her short-term disability benefits came to an end, Plaintiff applied for long-term disability benefits.  Plaintiff based her claim for long-term disability on complaints of fibromyalgia, narcolepsy, sleep apnea, pituitary insufficiency, carpal tunnel syndrome, depression, and anxiety.  After gathering and reviewing Plaintiff's medical records, Unum informed Plaintiff in its February 26, 2004 letter that it granted Plaintiff's long-term disability for six weeks.  Unum specifically granted these benefits, however, to cover Plaintiff's carpal tunnel syndrome and proposed surgery.  Unum further informed Plaintiff that it would continue to monitor Plaintiff's medical condition with periodic updates.  After an on-going evaluation, Unum determined that Plaintiff no longer met the definition of "disabled" under the policy, and informed Plaintiff that she was no longer eligible to receive benefits under the policy.  Rather, Plaintiff would be required to return to work.

On December 23, 2004, Plaintiff filed an appeal with Unum.  After noting that she needed to supplement  her current medical file, Plaintiff sent Unum a letter containing additional medical information.  The information included a statement from Plaintiff explaining why she could no longer perform her job and a letter from her sleep physician, Dr. Clark.  Dr. Clark's letter stated that Plaintiff was unable to fulfill her job requirements and contained general medical studies not specific to Plaintiff, which posited that obstructive sleep apnea could affect cognitive functions.  Plaintiff's appeal reveals that Plaintiff is morbidly obese and experiences chronic fatigue, apnea, narcolepsy, and fibromyalgia, all of which are worsened by stress,

anxiety and depression that she suffers.  She argues that her illnesses affect her cognitive functions and thereby prevent her from performing her duties as a computer programmer.[1]  After a thorough review of Plaintiff's appeal, Unum denied Plaintiff's appeal for long-term disability benefits.  Subsequently, Plaintiff asserts a single claim in this Court under 29 U.S.C. § 1132(a)(1)(B), which "gives a participant the right to bring a civil action 'to recover benefits due to [her] under the terms of [her] plan, to enforce [her] rights under the terms of the plan, or to clarify [her] rights to future benefits under the terms of the plan.' " *Creech v. Unum Life Ins. Co. of N. Am.*, No. 05-5074, 2006 WL 41186, at *2 (6th Cir. Jan. 9, 2006).

## B.  Analysis

### 1.  Standard Involved

It is well settled that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Kalish v. Liberty Mutual/Liberty Life Assur. Co. of Boston*, 419 F.3d 501, 505-06 (6th Cir. 2005) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)); *see also Calvert v. Firstar Finance. Inc.*, 409 F.3d 286, 291-92 (6th Cir. 2005).  If the plan provides the administrator with discretion, then "the highly deferential arbitrary and capricious standard of review is appropriate."  *Borda v. Hardy, Lewis, Pollard, & Page, P.C.*, 138 F.3d 1062, 1066 (6th Cir. 1998); *see also Calvert*, 409 F.3d at 291-92.

Both sides agree that the arbitrary and capricious standard applies in the instant case. (Doc. # 20, at 12; Doc. # 22, at 1.)  The Sixth Circuit has explained that, in determining whether

---

[1]    The record notes that her job as computer programmer causes her stress because it requires multi-tasking, excellent short-term memory, and a high degree of concentration

this standard applies, a court should remain cognizant that a plan is not required to use certain magic words to create discretionary authority for a plan administrator in administering the plan. *Johnson v. Eaton Corp.*, 970 F.2d 1569, 1572 at n.2 (6th  Cir. 1992).  What is required is "a clear grant of discretion [to the administrator]."  *Wulf v. Quantum Chemical Corp.*, 26 F.3d 1368, 1373 (6th Cir. 1994), *cert. denied*, 513 U.S. 1058 (1994).  Because the plan involved here provides that "[w]hen making a benefit determination under the policy, UNUM has discretionary authority to determine your eligibility for benefits and to interpret the terms and provisions of the policy" (Rec. at 189), the Court agrees with the parties that the arbitrary and capricious standard applies.[2]  *See Evans v. Unumprovident Corp.*, 434 F.3d 866, 876 (6th Cir. 2006) (construing identical language and concluding that "[t]he plan at issue clearly and unambiguously grants discretionary authority to defendant in its administration of the plan and determination of claims for benefits").

The arbitrary and capricious standard is a "difficult one for the claimant to overcome." *Nance v. Sun Life Assurance Co. of Canada*, 294 F.3d 1263, 1269 (10th Cir. 2002); *see also Davis v. Ky. Fin. Cos. Ret. Plan*, 887 F.2d 689, 693 (6th Cir. 1989) (noting that "the arbitrary and capricious standard is the least demanding form of judicial review").  This standard, however, "does not require [the Court] merely to rubber stamp the administrator's decision." *Jones v. Metropolitan Life Ins. Co.*, 385 F.3d 654, 661 (6th Cir. 2004) (citing *McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 172 (6th Cir. 2003)).  Rather, under the arbitrary and capricious standard, a plan administrator's decision will not be deemed arbitrary and capricious so long as "it is possible to offer a reasoned explanation, based on the evidence, for a

---

[2]        As Unum notes in its briefing, other policy provisions also reflect Unum's discretionary authority. (Doc. # 20, at 12.)

particular outcome." *Davis*, 887 F.2d at 693.  A court must therefore "review the quantity and quality of the medical evidence and the opinions on both sides of the issues." *Jones*, 385 F.3d at 661.  In other words, the Court will uphold a benefit determination unless it is not grounded on any reasonable basis. *Nance*, 294 F.3d at 1269; *see also Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 381 (6th  Cir. 1996) (stating that a benefit determination will be upheld if it is "rational in light of the plan's provisions.")

In evaluating the record, then, the Court is required to consider only the facts known to the plan administrator at the time the final decision was made to deny disability benefits.  *Moon v. Unum Provident Corp.*, 405 F.3d 373, 378 (6th Cir. 2005); *see also Miller v. Metropolitan Life Ins. Co.*, 925 F.2d 979, 986 (6th Cir. 1991).  The Court is also required to remain cognizant of the potential inherent conflict of interest that arises when an insurer such as that Unum acts as both the decision maker on a claim and the potential payor of that claim.  *Calvert*, 409 F.3d at 292 ("[t]he 'possible conflict of interest' inherent in this situation 'should be taken into account as a factor in determining whether [Unum's] decision was arbitrary and capricious.' "(quoting *Davis*, 887 F.2d at 694).

Applying the arbitrary and capricious standard to review of the administrative record, this Court recognizes certain guidelines that the Sixth Circuit has set forth with regard to review of benefit determinations.  As long as a plan administrator offers a reasonable explanation based upon the evidence for its decision, it may choose to rely upon the medical opinion of one doctor over that of another doctor.  *See Evans v. Unumprovident Corp.*, 434 F.3d 866, 877 (6th Cir. 2006).  Also, the Supreme Court has held that in the ERISA context that "Courts have no warrant to require administrators automatically to accord special weight to the opinions of a

5

claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation." *Evans*, 434 F.3d at 877 (quoting *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834). Furthermore, despite Plaintiff's contention that "Unum did no testing, [and] employed no outside physicians or sleep experts to review plaintiff's medical records" a plan administrator is not required to conduct a physical examination or hire an outside physician. *See Calvert*, 409 F.3d at 295. A plan administrator's reliance on a file review does not standing alone require the conclusion that the administrator acted improperly, rather it constitutes yet another element in the equation of reasonableness of the administrator's benefit determination. *Id.* A plan administrator, however cannot arbitrarily disregard the medical evidence proffered by the claimant, including the opinions of a treating physician. *Black & Decker Disability Plan*, 538 U.S. at 834; *Calvert*, 409 F.3d at 294. With these concerns in mind, the Court shall turn to the merits of the record.

### 2. Discussion

In sum, the Court finds that Unum took into account the following evidence to support its decision to deny Plaintiff long-term disability benefits: Plaintiff's most recent sleep studies performed on March 7 and 8, 2004 by Dr. Clark; an Income Protection Claim form signed by Dr. Clark on March 9, 2004; a letter from Dr. Clark on March 10, 2004; Plaintiff's own statements in a phone conversation with Unum on April, 27 2004; a vocational review on May 4, 2004; medical reviews completed by R.N. Angela Sandberg, Dr. Woolson Doane, an expert in Clinical

and Corporate Occupational and Environmental Medicine, and RN Bethany Washburn[3]; and a
physician review completed by Dr. Larry Broda on May 21, 2004.

Specifically, Dr. Broda and R.N. Sandberg came to several conclusions after assessing
the opinions of Dr. Clark.  First, on Plaintiff's claim for sleep apnea and narcolepsy, RN
Sandberg stated that  "[n]o repeat testing was completed until 3/04 noting good control of her
OSA with supplemental oxygen.  The current information does not provide evidence that this
condition would cause the clmt's ability to function to be impaired at or since the date of loss."
(Rec. at 102.)  Second, regarding Plaintiff's claim of pain due to her fibromyalgia, Dr. Broda
noted: "[t]here is no information to indicate a clinically significant change in this condition to
support a secondary loss of functional capacity." (Rec. at 102.)  Further, after noting that
Plaintiff had a flare up of fibromyalgia following a poor performance report, Dr. Broda stated
"[t]here is no indication of consistent endocrinological abnormalities . . . [the] only supported
decrease in functional capacity is from 3/1/04 until 4/26/04 due to her carpal tunnel repair."
(Rec. at 104-105.)   After reviewing Plaintiff's description of her daily activities[4], RN Sandberg
also noted that "clmt's reports of studying and using the computer would contradict these
reported sx and any secondary reported loss of functional capacity."

Implying that Unum failed to consider evidence of Plaintiff's cognitive impairment,
Plaintiff contends that her claim for disability is not a functional capacity issue, but a "cognitive,

---

[3]      These medical reviews examined and assessed the medical records from all of Plaintiff's
physicians and therapists including: Dr Clark, Dr. Chalmers, Dr. Cantrell, Dr. Bay, Dr. Kerr, Dr. Perkins, Dr.
Guthrie, and Wisne LPCC.

[4]      These activities include: studying and/or working up to 5 hours a day to become a travel agent and
also assisting her sister in her home based travel business, gardening, doing laundry, going to water aerobics, fixing
dinner and cleaning, and spending time reading and on the computer.  (Rec. at 99, 101.)  This record also reveals that
Plaintiff attended out of state conferences for the travel business as well.  (Rec. at 128-129.)

tasking and confusion issue." (Doc. # 16 at 6.)  To support her claim that cognitive issues prevented her from doing her job, Plaintiff repeatedly states that Unum's review of Dr. Clark's medical records reveals the presence of obstructive sleep apnea, and Unum's reviewers concluded that "sleep deprivation from any cause affects strategic thinking and executive function." (Doc. # 16 at 12.)

This Court finds that Plaintiff misconstrues the record: Plaintiff selectively omits portions of the text to support her contention that Unum "disregarded the medical opinions of Dr. Clark and its own-in house physicians."  (Doc. # 16 at 14.)  Rather, a full examination of the record shows that Unum first reviewed and assessed Plaintiff claim's of cognitive impairment in light of records of Dr. Clark and the review of Unum's medical physicians.  Only then did it conclude that there was no evidence that Plaintiff was cognitively impaired.

First, Dr. Doane's review undermined Dr. Clark's recommendation of disability.  While the record reveals that Dr. Clark monitored Plaintiff's nighttime sleep, Dr. Doane noted that "there has been no formal objective neuropsychological testing of this claimant's cognitive function, the report of cognitive impairment is based on claimant self-report and physician (Dr. Clark) speculation based on known consequence of sleep deprivation as a consequence of OSA and narcolepsy.[5]"  (Rec. at 132.)  While it is true that Dr. Doane noted "that sleep deprivation from any cause affects strategic thinking and executive function," Plaintiff ignores the context in which that statement is made.  That statement is followed by Dr. Doane's observation that "there was no indication of physical impaired functional capacity for light to moderate activities and there was no indication of any cognitive deficit as reported by the claimant."  (Rec. at 132)

---

[5]        Though cognitive testing is not required, Plaintiff has the burden to submit information to support her claim under the terms of the Plan.  (Rec. at 208.)

Thus, Dr. Doane's recognition of the effects of sleep apnea on cognitive functions is merely a general observation that may be is true in some instances but is not, in Dr. Doane's opinion, supported by the evidence in this case.

Moreover, Dr. Doane reviewed Plaintiff's purported daily activities and concluded that they "belie the fact that she is impaired by daytime somnolence. Resting in a recliner for 20 minutes does not equate with excessive daytime somnolence, particularly for someone this obese." (Rec. at 132) Dr. Doane's review of Plaintiff's reported activities also questioned whether Plaintiff's claims of fatigue and pain are credible. Dr. Doane states, "[t]he ability to travel, attend out of town conferences and pursue studies for an alternate career of travel agent also belies the presence of significant or impairing daytime somnolence or cognitive impairment." (Rec. at 132.)

Also, Dr. Doane assessed Unum's vocational review conducted on May 4, 2004 noting that it "did not give any indication that the claimant exhibited excessive somnolence during a stimulated set of skill testing." Despite observing that Plaintiff has some lack of physical stamina and problems dealing with stress, Dr. Doane also stated that "[t]here is no indication that the claimant had difficulty interfacing with a computer based occupation." (Rec. at 132.)

Finally, Dr. Doane further questioned Plaintiff's credibility when observing that the "office notes by her physicians clearly indicate that claimant sought use of long term disability benefits to deal with income issues while she obtained training and/or employment in another field of endeavor." (Rec. at 133.)

This Court finds that Unum also questioned Dr. Clark's opinion that Plaintiff was unable to perform her duties as a computer programmer. (Rec. at 7.) Dr. Clark's opinion in his March

10, 2004 letter, relies heavily upon the fact that Plaintiff is "sleepy to the point that she voluntarily stopped driving for fear that she would kill someone." (Rec. at 7.) The record calls into question the truth of this statement as Plaintiff drove herself to and from the vocational assessment for two weeks. (Rec. at 491.)

Thus, this Court finds that Unum reviewed the entire record. There is absolutely no evidence to indicate that Unum arbitrarily disregarded the medical opinions of Plaintiff's physicians. Conversely, the record shows that Unum's reviewing physicians examined, commented, and opined upon records of Plaintiff's physicians. Unum relied on portions of Plaintiff's physicians' opinions, and rejected others to the extent that they contradicted the well-reasoned conclusions of Unum's reviewing physicians. The refusal to credit portions of Plaintiff's physicians' opinions against the conclusions of Unum's reviewing physicians is thus not arbitrary, but a rational decision (even if it were not necessarily one that this Court or any other decision-maker might have reached.) *See Black & Decker Disability Plan*, 538 U.S. at 834.

Thus, having reviewed the quantity and the quality of the medical evidence with due skepticism of Unum's decision, the Court cannot say that the Unum's denial of benefits was unreasonable or irrational in light of the Plan's provisions. This does not mean that Plaintiff is without credible evidence supporting her claim in the record, but it does mean that there is sufficient evidence to support the contention that Unum's denial of benefits was reasonable and rational.

## C. Conclusion

For the reasons aforementioned, this Court **DENIES** Plaintiff's motion (Doc. # 16) and

**GRANTS** Unum's motion (Doc. # 20). The clerk shall enter judgment accordingly and terminate this case upon the docket records of the United States District Court for the Southern District of Ohio, Eastern Division.

      **IT IS SO ORDERED.**

                             **/s/   Gregory L. Frost**

                             **GREGORY L. FROST**
                             **UNITED STATES DISTRICT JUDGE**